CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 24 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TRAVIS JACKSON MARRON, | ) | CASE NO. 7:13CV00338 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| SGT. MILLER, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Travis Jackson Marron, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), alleging that the defendant prison officials violated his rights by confiscating his religious books, shaver, and sunglasses. Defendants have filed a motion to dismiss, and Marron has responded, making the matter ripe for disposition. After review of the record, the court concludes that the motion to dismiss must be granted.

## Background

Marron's submissions indicate the following relevant facts. While he was incarcerated at Lawrenceville Correctional Center, Marron was approved to receive the Common Fare Diet, designed to accommodate inmates' religious dietary beliefs. Marron had also petitioned the state court to change his legal name for religious reasons.[1] In March 2013, Virginia Department of Corrections ("VDOC") officials transferred Marron to Augusta Correctional Center. When Marron arrived at Augusta on March 20, 2013, Defendants Miller and Flavin inspected his personal property and confiscated several items that did not comply with Augusta's property restrictions. They informed Marron that they were confiscating his religious books, because he

---

[1] Marron alleges that at the time the defendants confiscated his books, the Brunswick County Court had denied his petition for name change, the Supreme Court of Virginia had overturned that decision and remanded the case, and he had yet to receive a final order from the Brunswick court.

had marked the books with his Muslim name rather than his legal name. They also confiscated Marron's electric shaver, his prescription sunglasses for outdoor use, and his polarized sunglasses for indoor use. They told Marron that he could not have these items at Augusta because the shaver and the outdoor sunglasses were different than similar items available through Augusta's commissary and his prescription sunglasses had metal frames. Marron filed a grievance about the confiscation, which officials determined to be unfounded. The grievance response notified Marron that his property items would be held in the property department until he had a chance to appeal the grievance. Marron's appeal was unsuccessful.

Marron claims that his eyes are sensitive to light and without his sunglasses, he suffers from eye pain and headaches. When he saw the eye doctor about this problem in late March 2013, the doctor indicated, "[Marron] is very light sensitive and would benefit from sunglasses and tinted lenses inside. If rules allow please re-issue glasses for him.'" (ECF No. 2, p. 24.) A nurse noted, however, that Marron "must purchase sunglasses through commissary." (Id.)

Marron raises three claims against Miller and Flavin based on these events: (A) confiscation of his religious books violated his right to free exercise of his religious beliefs; (B) confiscation of his shaver and sunglasses deprived him of property interests without due process; and (C) confiscation of his prescription sunglasses was cruel and unusual punishment because of his medical problems. Marron seeks monetary damages for these alleged violations.

## Discussion

Plaintiff's claims cannot survive a motion to dismiss unless he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.662, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (finding motion to dismiss properly

granted where plaintiff's factual allegations do not state "plausible" claim for relief). The complaint must allege facts sufficient "'to raise a right to relief above the speculative level,' thereby 'nudg[ing] the[ ] claims across the line from conceivable to plausible.'" Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) (first alteration in original) (quoting Twombly, 550 U.S. at 555, 570). In undertaking this review, the court must accept as true plaintiff's "well-pleaded, nonconclusory factual allegations in the complaint."[2] Burnette v. Fahey, 687 F.3d 171, 180 (4th Cir. 2012) (quotations and citations omitted). To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

## A. Deprivation of Religious Books

Marron asserts that Miller and Flavin confiscated his religious books because of his religion and, thereby, substantially burdened his ability to exercise his religious beliefs. Defendants argue that Marron has not established that defendants' actions substantially burdened his religious belief, and the court agrees.

The First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise thereof." U.S. Const. amend I.; Cruz v. Beto, 405 U.S. 319, 322 (1977). To prove a violation of this right, an inmate must first state facts sufficient to show that (1) he holds a sincere belief that is religious in nature; (2) the prison regulation imposes a substantial burden on his right to free exercise of his religious beliefs; and (3) the regulation is not "reasonably related

---

[2] When dismissing a complaint for failure to state a claim upon which relief may be granted, courts may consider exhibits submitted in support of the complaint, and where a conflict exists between "the bare allegations of the complaint" and any of the plaintiff's exhibits, "the exhibit prevails." United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991); see also Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995).

3

to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quotation and citation omitted).

RLUIPA heightens an inmate's free exercise rights by prohibiting the government from imposing a "a substantial burden" on an inmate's religious exercise unless the government can demonstrate that the regulation "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). A regulation imposes a "substantial burden" if it "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 70, 718 (1981); Sherbert v. Verner, 374 U.S. 398 (1963)). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult" or inconvenient, but does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion. Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007); Living Water Church of God v. Charter Tp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007).

VDOC Operating Procedure ("OP") 802.1, including the "Authorized Personal Property Matrix," sets out restrictions regarding personal property inmates may possess in VDOC institutions. Unless an item of property is included on the OP's approved list, is currently sold at the facility's commissary, or approved by the Faith Review committee, an inmate may not lawfully possess that property item at the facility without special written permission from the VDOC Chief of Operations. OP 802.1(IV)(G). When an inmate arrives at a new facility with property that is disallowed at that facility, he may not possess such property, but may designate that disallowed items be mailed to an address of his choice, picked up by a visitor, or donated to charity. OP 802.1(V)(F)(6). Any state or personal property which has been altered or modified

without written authorization may be confiscated as contraband. OP 802.1(VII)(G). The inmate may appeal a property confiscation. If officials determine on appeal that a confiscated item is, in fact, authorized, officials should return it to him if he establishes that he owns it. OP(VII)(I).

Marron's allegations indicate that the confiscated books were marked with a name under which he was not yet legally recognized by the state courts or the VDOC. Thus, Miller and Flavin had a valid basis under OP 802.1 to confiscate the marked books as contraband. No facts in the record support Marron's naked assertion that the officers took the books because they were religious, rather than because they qualified as contraband, since they were altered and possibly did not belong to Marron.[3]

Defendants argue that Marron has not alleged any particular, sincere religious belief. The court agrees that the complaint does not provide any detailed description of Marron's religious beliefs or how confiscation of the books burdened his religious practice. Marron's submissions do indicate, however, that he was transferred to Augusta after being approved to receive the Common Fare religious diet and that he brought a court action to change his given name to a Muslim name. The court will, therefore, assume for purposes of this inquiry that Marron has sufficiently alleged a sincere Muslim religious faith.[4]

Marron's complaint, however, fails to allege facts stating a claim that by confiscating his books under the contraband policy, Miller and Flavin substantially burdened his exercise of his religion. Marron does not state in his complaint the names of the confiscated books or describe

---

[3] To the extent that Marron is attempting an equal protection claim here, it fails. Marron does not allege that other inmates were allowed to keep religious books under similar circumstances or that Miller and Flavin purposefully discriminated against him as a Muslim when they confiscated the books. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (finding that to prove equal protection claim, prisoner "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination").

[4] The court also notes that Marron has provided significantly more information about his religious beliefs in his verified response to defendants' motion.

their importance to his ability to practice his religious beliefs. More importantly, however, Marron does not allege that the defendants or the property policy would have prevented him from obtaining and possessing unmarked copies of the religious books. The mere inconvenience and cost Marron would undergo to find and purchase other copies to replace the marked, contraband copies are not sufficient to constitute a substantial burden for purposes of his claims under the First Amendment or RLUIPA. Living Water, 258 F. App'x at 739. Because Marron's allegations against Miller and Flavin fail to satisfy the "substantial burden" aspect of his religious claim, the court will grant defendants' motion to dismiss as to this claim.

### B. Confiscation of Nonconforming Property

Marron asserts that Miller and Flavin wrongfully confiscated his shaver and his sunglasses, which he had possessed without incident at Lawrenceville, to force him to purchase additional items at the commissary. He contends that this confiscation violated his Fourth, Fifth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures, to be free from deprivations of property without due process, and to receive just compensation. The court cannot find that the defendants' actions deprived Marron of any constitutionally protected right.

First, Marron's allegations fail to state any Fourth Amendment claim. Prison inmates do not have any reasonable expectation of privacy in their prison cells entitling them to the protection of the Fourth Amendment against unreasonable searches and seizures of property from those cells. Hudson v. Palmer, 468 U.S. 517, 530 (1983). "Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." Id. at 528 n.8. The court must defer to the expertise of prison officials in determining what property inmates may possess while in custody. Block v. Rutherford, 468 U.S. 576, 591 (1984).

6

Second, Marron's complaint fails to state any claim that Miller and Flavin deprived him of any protected property interest in violation of the Fourteenth Amendment right to due process. Marron's submissions indicate that while he could not possess the sunglasses and shaver at Augusta, he was not deprived of all interest in that property. Under OP 802.1, he retained the ability to give the items to a family member or friend for safekeeping, if he so chose. Moreover, Marron does not demonstrate that the available, post-deprivation procedures available to him through the grievance procedure were inadequate to prevent a wrongful application of the policy.

Finally, Marron's allegations do not support a constitutional claim for "just compensation" for his confiscated property. The Fifth Amendment provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V. This clause refers to the government's power of "eminent domain," its power "to transform private property into public property" under certain circumstances. Washlefske v. Winston, 234 F.3d 179, 183 (4th Cir. 2000) (quotations and citations omitted). As Marron does not allege facts indicating that Miller and Flavin took his property items for public use, he states no facts showing that he is entitled to just compensation for those items under the Fifth Amendment. For the stated reasons, the court will grant the defendants' motion to dismiss as to Marron's claim regarding confiscation of his shaver and glasses.

### C. Medical Need for Sunglasses

In his final claim, Marron contends that Miller and Flavin, by confiscating his prescription sunglasses, interfered with his medical treatment in violation of his constitutional rights. Because Marron fails to demonstrate that these defendants knew that their actions posed a substantial risk of harm, however, the court will grant the motion to dismiss.

7

Punishments or prison conditions are "repugnant to the Eighth Amendment" if they . . . involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotations omitted). To prove a constitutional claim regarding medical care, an inmate must show that the defendants exhibited "deliberate indifference" to his "serious medical needs." Id. at 104-105. Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Id. at 105-106. An official acts with deliberate indifference if he was aware of facts from which he could draw an inference that a substantial risk of harm existed, drew that inference, and disregarded or responded unreasonably to the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotations omitted). Prison officials may rightfully rely on the opinion of the inmate's treating physician as to the proper course of treatment for a particular condition. Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990).

Under these principles, Marron has not alleged facts supporting any claim against Miller and Flavin with regard to his medical needs. Marron does not allege that he showed the defendants any documentation during the March 2013 property inspection, demonstrating that a doctor had previously determined a serious medical need for Marron to wear sunglasses. He also does not describe any outward symptoms of his alleged light sensitivity that would have put Miller and Flavin, without any medical training, on notice that his condition presented a serious medical need to retain his sunglasses. Moreover, the doctor who examined Marron later that month only recommended, but did not order, that officials issue Marron sunglasses for indoor use due to his light sensitivity, and he remained free to purchase sunglasses from the

8

commissary. On these facts, the court cannot find that Miller and Flavin, when they confiscated Marron's sunglasses, knew that their actions placed him at any substantial risk of harm because of a serious medical condition. The court will grant defendants' motion to dismiss as to Marron's medical claim.

## Conclusion

For the reasons stated, the court concludes that Marron has failed to allege facts sufficient to state any constitutional claim actionable under § 1983. Therefore, the court will grant defendants' motion to dismiss and deny as moot Marron's motion for appointment of an investigator.[5] An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 24th day of June, 2014.

*(signature)*
Chief United States District Judge

---

[5] In this motion, Marron asserts that an investigator could help him assemble proof to support his claims, such as affidavits from other inmates who were allowed to possess property at Augusta similar to the items confiscated from Marron. Because the court has determined that Marron's allegations, even if true, do not state any cognizable constitutional claim, however, his request for assistance in establishing the truth of his allegations is moot.